# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

## Case No. 9:15-CV-81203-ROSENBERG/HOPKINS

GIOVANNA MONTEVERDE, JESSICA
CANDACE REID, STEPHANIE
KRAUEL, GABRIELLE WILLIAMS,
GABRIELLA ORMENO, & ROXANNE
MCGONIGAL, Individually, and on Behalf
of All Others Similarly Situated,

      Plaintiffs,

v.

WEST PALM BEACH FOOD &
BEVERAGE, LLC, a Florida limited
liability company, WILLIAM BULLARD,
individually, RANDY BEASLEY,
individually & HAROLD R.E. JOHNSON,
individually,

      Defendants.

_____/

## OMNIBUS ORDER ON PENDING MOTIONS

This matter is before the Court on Defendants' Motion to Dismiss and Compel Arbitration [DE 21], Defendants' Supplemental Motion to Dismiss [DE 92], Defendants' Motion for Enlargement of Time to Conduct Depositions and Further Discovery [DE 108], Defendants' Objection to Magistrate Judge Order on Motion to Compel [DE 124], and Defendants' Objection of Magistrate Judge Order on Motion for Protective Order [DE 125]. The motions to dismiss have been fully briefed. Although Plaintiffs have yet to respond to Defendants' objections to Judge Hopkins' orders on appeal, the Court deems responses unnecessary. The Court has reviewed the documents in the case file and is fully advised in the premises. After a brief review of the facts of this case, each motion is addressed in turn.

## I.    INTRODUCTION

Plaintiffs initiated this suit by alleging, *inter alia*, that Defendants violated the Fair Labor Standards Act, 29 U.S.C. §§ 206, 207.  Plaintiffs are former dancers (with the exception of Plaintiff Williams) who worked at a night club owned and operated by Defendants.  DE 80 at 2. Plaintiffs allege that they were not paid minimum wage by virtue of Defendants incorrectly treating Plaintiffs as independent contractors when they were, in fact, employees.  *Id.*

Defendants responded to Plaintiffs' allegations by moving for this Court to compel arbitration.  DE 21.  In furtherance of their motion, Defendants provided signed agreements for each Plaintiff (with the exception of Plaintiff DeCastro) wherein Plaintiffs agreed to arbitrate.  DE 21-28.  Plaintiffs raised a multitude of arguments why arbitration should not be compelled pursuant to the terms of the agreements.  In relevant part, Plaintiffs argued that they were not given all of the pages of the signed agreements at the time of their execution or afterwards, that they were under duress to sign the agreements, and that for at least some of the Plaintiffs the form of the written agreements (in English) was such that the Plaintiffs could not understand what they signed.

The Court held an evidentiary hearing on January 6, 2016, and January 7, 2016 to determine if questions of fact existed as to whether an agreement to arbitrate had been entered into between Plaintiffs and Defendants.  At the conclusion of the evidentiary hearing, the Court ruled that questions of fact did exist.  The Court further concluded (and Plaintiffs agreed) that because Plaintiffs had not and did not demand a trial by jury on the issue of whether an agreement to arbitrate was entered into, it was the duty of the Court to resolve the aforementioned disputes of fact.  Defendants requested the opportunity to provide additional evidence on this issue, and the Court agreed.  On March 4, 2016, the Court heard additional evidence from all parties.  The Court

2

summarizes its findings of fact and conclusions of law below.

## II. ANALYSIS AND DISCUSSION

Presently before the Court are five separate motions.  The Court addresses the motions in the following order: (A) Defendants' Motion to Dismiss and Compel Arbitration, (B) Defendants' Supplemental Motion to Dismiss, (C) Defendants' Motion for Enlargement of Time to Conduct Depositions and Further Discovery, and (D) Defendants' Objection to Magistrate Judge Order on Motion to Compel and Defendants' Objection of Magistrate Judge Order on Motion for Protective Order.

### A.  Defendants' Motion to Dismiss and Compel Arbitration

Defendants argue that Plaintiffs should be compelled to arbitrate and that this case should be dismissed.  Defendants' argument is premised upon agreements to arbitrate, executed by Plaintiffs, which contain the following clause:

> The parties agree that any controversy, dispute or claim arising out of this Agreement or otherwise out of Entertainer performing at the Premises shall be exclusively decided by binding arbitration.

DE 25-2 at 6.  Pursuant to the Federal Arbitration Act,[1] "[T]he court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement."  9 U.S.C. § 4.  The language applicable here is, "[I]f the making of the arbitration agreement . . . be in issue, the court shall proceed summarily to the trial thereof.  If no jury trial be demanded by the party alleged to be in default . . . the court shall hear and determine such issue."  *Id.*  Defendants have provided arbitration agreements for all

---

1 The parties do not dispute that the Federal Arbitration Act applies here.

Plaintiffs,[2] but the "making of an arbitration agreement" is in issue insofar as Plaintiffs dispute an agreement to arbitrate was ever reached between the parties. Plaintiffs' objections are founded in Florida law because "[l]ike other contracts . . . [arbitration agreements] may be invalidated by 'generally applicable contract defenses [under state law].'" *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 68 (2010). The Court heard evidence over the course of three days on this matter and, pursuant to 9 U.S.C. § 4, the Court makes its findings.

Plaintiffs' evidence and contentions on the arbitrability issue are best divided into four categories. Three of these categories raise factual disputes and the final category consists solely of legal objections. The Court delineates these categories as follows: (1) Plaintiffs were not provided the full agreements they signed (only the pages requiring signatures), (2) Plaintiffs were under duress to sign the agreements, (3) some of the Plaintiffs did not understand (due to a language barrier) the agreements they signed, and (4) Plaintiffs' legal objections to arbitration: the agreements lack a commencement date, the agreements do not apply to Ms. Williams, the agreements do not apply retroactively, the agreements are not arbitrable, and a clawback provision prohibits Plaintiffs' from vindicating their rights under the FLSA. The Court addresses each category in turn.

### 1.  Whether Plaintiffs were provided with every page of the agreements they signed

With respect to Plaintiffs' contention that they were not provided with all of the pages of the agreements they signed, mutual assent as to essential terms is an absolute condition precedent for a contract's formation. *See, e.g.*, *Gibson v. Courtois*, 539 So. 2d 459, 460 (Fla. 1989); *see also Gustavsson v. Washington Mut. Bank, F.A.*, 850 So. 2d 570 (Fla. Dist. Ct. App. 2003) ("[T]he

---

2 It is unclear whether one Plaintiff, Ms. Melina DeCastro, signed an  arbitration agreement.  In any event, Defendants are unable to locate a signed agreement for Ms. DeCastro and she is addressed separately in section (B), *infra*.

existence of conspicuous terms providing for other terms elsewhere is not all that is required to make such other terms binding. The terms must actually be provided."). Each Plaintiff testified on this precise issue. The Court summarizes Plaintiffs' evidence.

Some of the Plaintiffs were very precise in their testimony. For example, Ms. Krauel testified:

> *Q.* At the time you executed page 2 of 8, were you given any of those other documents?
>
> *A.* No. Absolutely not.

DE 119-9 at 41. It was therefore the clear and uncompromising testimony of some of the Plaintiffs, including Ms. Krauel, that they were only provided with signature pages at the time they executed the disputed agreements in this case. Not all of the testimony that the Court heard exhibited the level of certainty attested to by Ms. Krauel. For example, Ms. McGonigal testified as follows:

> *Q.* What parts of this document were presented to you from anyone at Rachel's?
>
> *A.* The first and document 5.
>
> *Q.* So the first page, and page 5?
>
> *A.* Yes, but it is thin enough it could have been all together and these were the areas to sign . . . . [a]nd as far as the ones in between, it could have been with it or it could not. I can't give you a pinpoint answer because I don't know fully on if it really was or not.

*Id.* at 160, 163. Finally, a portion of the testimony that the Court heard on this issue lacked credibility. For example, Ms. Ormeno testified that while she could clearly remember that she was only presented with two pages to sign, she could remember no other detail pertaining to any other event contemporaneous with her signature:

> *Q.* Okay. Who told you that?

*A.* The manager.

*Q.* Who was that?

*A.* I don't remember his name.

. . .

*Q.* You don't remember what else you were given?

*A.* No.

*Q.* Okay.  You remember those two pages, but you don't remember if you were given anything else; is that right?

*A.* Correct. I don't think they gave me anything else.

. . .

*Q.* Do you see the document within that folder at the top that says "entertainer photo card"?

*A.* Yes.

*Q.* Is that your handwriting?

*A.* Yes.

*Q.* Do you recall completing that document on [the date the agreement to arbitrate was executed]?

*A.* I don't remember the date, but I remember -- this is my handwriting, so, yes.

Third Evidentiary Hearing Transcript pgs. 17, 28, 30.

Although Ms. Ormeno remembered details beneficial to her case, she could remember no other details that would lend credibility to her testimony.  Conversely, the Court finds the testimony of Ms. McGonigal to be very credible.  Ms. McGonigal exhibited a sincere desire to provide the Court with honest testimony and expressed no reservations about attesting to facts detrimental to her case.  It was Ms. McGonigal's testimony that the entire agreement in this

case—not just the signature pages—*may* have been provided to her.   In weighing the aforementioned testimony, the Court is mindful of the evidence introduced at trial that some of Plaintiffs and other similarly-situated workers in the adult entertainment industry are pursuing cases similar to the instant case against other night clubs.   It is the curious position of similarly-situated plaintiffs in other suits that they, too, were not provided with the full terms of the agreements they signed.   When the Court weighs the credibility of all of Plaintiffs' witnesses, the Court concludes that Plaintiffs were provided with all of the pages of the agreements they signed. The Court's conclusion is based upon the credible testimony of Ms. McGonigal and the lack of credibility of Ms. Ormeno.   To be clear, the Court is not finding that any witness testified in bad faith.   It may well be that the only pages the Plaintiffs can *remember* are the pages they signed.   But that does not mean that those were the only pages provided.   The Court's finding is not only based upon the credibility of Plaintiffs' testimony, it is also based upon the conclusion that, to an extent, Plaintiffs must rise or fall together based upon Defendants' evidence, which is summarized below.

Defendants provided substantial evidence that the agreements in this case were created with every page stapled together.   Defendants provided evidence that the agreements are printed and stapled by a third party, that the agreements are shipped to Defendants' main office, and that the agreements are stored in a secure area.   The Court is persuaded that the agreements in this case were bound together at creation and were delivered to Defendants in that form.

Although not all of the evidence introduced by Defendants pertained to the time periods at issue in this case, Defendants did provide testimony from one of the individuals responsible for delivering the agreements to dancers during the time periods at issue.   Notably, the employee responsible for such delivery was an independent contractor, primarily engaged in

cosmetology-based services, who had no apparent motive whatsoever to deprive Plaintiffs of the full pages of the agreements they signed.  The Court concludes that only two mutually exclusive possibilities are viable.  Either the pages of the agreements were delivered together to Plaintiffs or someone pulled the signatures pages out of the stapled packet and delivered only the signature pages to Plaintiffs.   The Court can discern no credible basis for Defendants or agents of Defendants to choose to extract signature pages for certain dancers, and not others.[3]  Thus, the Court concludes that Plaintiffs must rise or fall together.   Either Defendants systematically engaged in a pattern and practice of removing signatures pages at the time of execution or Defendants did not.

In summary, the Court is persuaded that (i) the pages of the agreements were bound, (ii) the pages remained bound and were not separated, (iii) the testimony of Ms. McGonigal (who testified all pages may have been presented to her) was credible, and (iv) the testimony of Ms. Ormeno (who testified that she only received signature pages) was not.  Therefore, in light of the foregoing, the credibility of all of Plaintiffs' witnesses who testified that they received signature pages *only* is disregarded.  Plaintiffs were provided with every page of the agreements they signed.

### 2.   Whether Plaintiffs were under duress to sign the agreements in this case

Plaintiffs introduced evidence that they were under duress to sign the agreements in this case.  Plaintiffs testified that they were under time pressure—they needed to begin work—and that they were in a busy, crowded, and chaotic environment[4] when they were provided the agreements.  Defendants responded by providing evidence that no dancer was penalized (such as via a fee or penalty) for taking the time to read the agreements.  The Court finds Plaintiffs' contentions to be

---

3 Defendants elicited testimony from a dancer who attested to receiving every page of the agreements.
4 Plaintiffs (with one exception) were provided the agreements in the dressing room / staging area immediately prior to beginning their performance for the evening.

without merit.  While Plaintiffs may have had a financial incentive not to read the agreements as the sooner they began work the sooner they could make money, this is not equivalent to duress. The Court finds that had Plaintiffs desired to slowly and carefully read the agreements that they were provided they would have been afforded the opportunity, without penalty, to do so.  Under Florida law, the signatory to a contract has a strong duty to read the contents of the agreement before he or she signs.  *Allied Van Lines, Inc. v. Bratton*, 351 So. 2d 344, 347-48 (Fla. 1977) ("Unless one can show facts and circumstances to demonstrate that he was prevented from reading the contract, or that he was induced by statements of the other party to refrain from reading the contract it is binding.  No party to a written contract in this state can defend against its enforcement on the sole ground that he signed it without reading it.").  For example, Florida courts have upheld contracts signed by a blind person who was unable to read the contract.  *Estate of Etting v. Regents Park at Aventura, Inc.*, 891 So. 2d 558 (Fla. Dist. Ct. App. 2004).  In summary, the Court finds that: (i) Defendants did not *prevent* Plaintiffs from reading the agreements in this case, (ii) Plaintiffs were not induced to refrain from reading the agreements, and (iii) Plaintiffs freely chose not to read the agreements.

### 3.   Whether Plaintiffs were unable to understand the agreements they signed

Plaintiffs have pursued the theory that some of the Plaintiffs were unable to understand the agreements that they signed because English is not their native language.  This theory was pursued primarily with respect to Ms. Monteverde.  The Court finds that Plaintiffs' lack of familiarly with the English language has been exaggerated and that Plaintiffs were capable of understanding the agreements they signed.[5]  Alternatively, to the extent Plaintiffs were not able to fully understand

---

5 Defendants elicited a substantial amount of testimony from persons who communicated with Ms. Monteverde over a lengthy period of time—all such conversations occurred in English.

specific terms or components of the agreements due to a language barrier, such a barrier does not preclude the enforcement of contract.  *See, e.g.*, *Onderko v. Advanced Auto Ins., Inc.*, 477 So. 2d 1026, 1028 (Fla. Dist. Ct. App. 1985) ("A party has a duty to learn and know the contents of an agreement before signing it," and "[a]ny inquiries . . . concerning the ramifications of [the contract] should have been made before signing.").  Additionally, the Court finds that: (i) if any Plaintiff expressed a desire for a Spanish translator or for time to have the agreements explained to them in Spanish, Defendants would have accommodated that request and (ii) Plaintiffs signed the agreements of their own volition and by freely choosing not to seek translation.

### 4.  Plaintiffs' legal objections to arbitration

"In reviewing a motion to compel arbitration, a district court must consider three factors: (1) whether a valid written agreement to arbitrate exists, (2) whether an arbitrable issue exists, and (3) whether the right to arbitrate was waived."  *Integrated Sec. Servs. v. Skidata, Inc.*, 609 F. Supp. 2d 1323, 1324 (S.D. Fla. 2009).  The Court addresses each of Plaintiffs' legal objections in turn.

(a)  <u>The commencement date of the agreements</u>

Plaintiffs challenge whether an agreement to arbitrate exists for all of the reasons set forth above (which the Court has rejected) as well as an argument based on the fact that "the license commencement date [was] left empty."  This argument is without merit, however, because "[u]nder Eleventh Circuit precedent, whether the Arbitration Agreement was signed or not, continued employment . . . demonstrates . . . acceptance of terms of the Arbitration Agreement."  *Czopek v. TBC Retail Grp., Inc.*, No. 8:14-cv-675, 2014 WL 5782794, at *4 (M.D. Fla. Nov. 6, 2014) (citing *Caley v. Gulfstream Aerospace Corp.*, 428 F.3d 1359 (11th Cir. 2005)).  There is no

dispute in this case that after the agreements were signed by the Plaintiffs, the Plaintiffs continued to work for the Defendants.

    (b) <u>The application of the agreement to arbitrate to Plaintiff Williams</u>

    Plaintiffs argue that arbitration should not be compelled for Ms. Williams because she worked as a masseuse, not a dancer, and the agreement (which applied to "entertainer/dancer" services) does not apply to her.  Under the Federal Arbitration Act, however, all doubts must be construed in favor of arbitration, including doubts concerning the construction of contract language itself.  *Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 24-25 (1983). The evidence that the Court heard pertaining to Ms. Williams did not have the effect of classifying her position so far from that of an "entertainer" that arbitration must be denied.  Ms. Williams did entertain customers as massages were part of the entertainment experience at the night club.  Thus, in light of the standard that all doubts must be construed in favor of arbitration, an arbitrator can and should decide whether Ms. Williams' work for Defendants presents an arbitrable issue.

    (c) <u>The retroactivity of the agreements to arbitrate</u>

    Plaintiffs also argue that the periods of time Plaintiffs worked for Defendants prior to executing the agreements in this case should not be subject to arbitration.  It is well settled that "[a]n arbitration agreement may be applied retroactively to transactions which occurred prior to execution of the arbitration agreement."  *Stewart v. Laidlaw & Co. (UK) Ltd., Inc.*, No. 11-22846, 2012 WL 280388, at *2 (S.D. Fla. Jan. 31, 2012) (citing *Drews Distrib. Inc. v. Silicon Gaming, Inc.*, 245 F.3d 347, 350 (4th Cir. 2001)).  "The presumption of arbitrability is particularly applicable where the arbitration clause is broad."  *Perera v. H&R Block E. Enters., Inc.*, 914 F. Supp. 2d 1284, 1288-89 (S.D. Fla. 2012) (citing *AT&T Techs., Inc. v. Commc'n Workers*, 475 U.S.

643, 650 (1986)).   The arbitration clause in this case is broad: "The parties agree that *any* controversy, dispute or claim arising out of this Agreement *or otherwise out of Entertainer performing at the Premises* shall be exclusively decided by binding arbitration."   *E.g.*, DE 25-2 at 6 (emphasis added).   Construing all doubts in favor of arbitration, an arbitrator can and should decide whether Plaintiffs' employment prior to execution of the agreements in this case presents an arbitrable issue.

(d) <u>The arbitrability of the agreements</u>

Plaintiffs further argue that arbitration should not be compelled because the agreement itself presents conflicting questions that no arbitrator can reconcile.   For example, Plaintiffs emphasize that they are pressing FLSA claims that assert Plaintiffs are employers while the agreement clearly states that Plaintiffs are *not* employees and that the arbitrator may make no ruling that conflicts with the agreement.   Plaintiffs' arguments are unpersuasive for several reasons.   First, FLSA claims are routinely arbitrated.   *See, e.g.*, *Walthour v. Chipio Windshield Repair, LLC*, 745 F.3d 1326, 1334 (11th Cir. 2014) ("After examining the FLSA's text, legislative history, purposes and . . . Supreme Court decisions, we discern no 'contrary congressional command' that precludes the enforcement of . . . arbitration agreements."); *Caley v. Gulfstream Aerospace Corp.*, 428 F.3d 1359 (11th Cir. 2005).   Second, Plaintiffs' counsel themselves have moved (recently) for arbitration of FLSA claims in an analogous case.   *See Pratts v. Ares on Fowler*, No. 2-15-cv-00124 (M.D. Fla. Mar. 18, 2015).   Third, the arbitrator possesses the authority under the agreements to sever any portion of the agreement that is invalid or unenforceable.   *See* DE 25-2 at 7.   Fourth, when an arbitration agreement, as here, incorporates the rules of the AAA, the Eleventh Circuit has held that this amounts to a clear and unmistakable intent

by the parties to have the arbitrator determine the validity of an arbitration agreement. *See Cohen v. Career Educ. Corp.*, No. 8:13-cv-00125, 2013 WL 3287083, at *2 (M.D. Fla. June 28, 2013) (citing *Terminix Int'l Co. v. Palmer Ranch Ltd. P'ship*, 432 F.3d 1327, 1332 (11th Cir. 2005)).

 (e) <u>The clawback provision in the agreements at issue</u>

  Plaintiffs additionally press a confusing and disjointed argument that a certain clawback provision in the agreements, together with attorney's fees provisions, have the ultimate result of stripping Plaintiffs of their rights under the FLSA and therefore this Court cannot compel arbitration. As an initial matter, the Court notes that the clawback provision and attorney's fees provision do not prohibit Plaintiffs from vindicating their rights under the FLSA. What those clauses may accomplish is to make Plaintiffs' claims and case less desirable in terms of economics and expected recovery.

  Plaintiffs cite to outdated law[6] in support of their argument in lieu of the seminal case on this matter, *American Express Co. v. Italian Colors Restaurant*, 133 S. Ct. 2304 (2013). In *American Express*, the plaintiffs made the argument (which closely resembles the argument by plaintiffs in this instant case) that an arbitration agreement had the result of depriving the plaintiffs of the vindication of their statutory rights because the cost to do so could exceed one million dollars (under the terms of the arbitration agreement which precluded class actions) while the maximum possible recovery would be less than forty thousand dollars. *Id.* at 2308. The Supreme Court flatly rejected this argument, noting that the law "do[es] not guarantee an affordable procedural path to the vindication of every claim." *Id.* at 2309. What the Supreme Court continued to prohibit, and which Plaintiffs indirectly argue via citation in a motion to supplement their opposition to the motion to compel, is that arbitration may be denied when the *costs to*

---

6 *D'Antuono v. Service Road Corp.*, 789 F. Supp. 2d 308 (D. Conn. 2011).

*arbitrate* are prohibitively expensive.  *Id.* at 2310-11.  Plaintiffs have cited to a case outside of this circuit in which the possibility of fee-shifting provisions in an arbitration agreement was determined to conflict with the FLSA.  That case, *Nesbitt v. FCNH, Inc.*, 811 F.3d 371, 379-80 (10th Cir. 2016), was decided in the context of *evidence* that the individual plaintiff was prohibited—on the basis of costs and the plaintiff's means—from arbitration.  Plaintiffs have failed to provide any notable or credible evidence of the same in this case.  In this circuit FLSA claims are routinely arbitrated and the Eleventh Circuit has interpreted and applied *American Express* in the context of permitting FLSA claims to be arbitrated.  *See Walthour*, 745 F.3d at 1332-36 (11th Cir. 2014). The Court concludes that the FLSA claims in this case are not precluded from arbitration on the basis of the clawback provision and attorney-fee-shifting concerns.

For all of the foregoing reasons, the Court concludes that a valid agreement to arbitrate exists, that arbitrable issues are present for an arbitrator to decide, and that Defendants have not waived their right to arbitrate.

### B.  Defendants' Supplemental Motion to Dismiss

Defendants argue that Ms. DeCastro's FLSA claims (the only Plaintiff for which Defendants cannot provide an arbitration agreement) must be dismissed.[7]  Defendants' argument is based upon the fact that at the evidentiary hearing on January 6, 2016 Ms. DeCastro stated the following:

*Q.* So, to be clear, when was the last time you worked for Rachel's?

*A.* The last time I work for Rachel's was July 2010 -- 2012, sorry, July 2012.

DE 119-9 at 15.  The maximum statute of limitations period for FLSA claims is three years.  29

---

7 Because the Court has referred all other Plaintiffs' claims to arbitration, the Court does not address Defendants' other arguments in their Supplemental Motion to Dismiss.

U.S.C. § 255.  This case was initiated on August 25, 2015.  DE 1.  Thus, by Ms. DeCastro's own

testimony her claims are precluded by the FLSA statute of limitations.

In response, Plaintiffs refuse to concede that Ms. DeCastro's FLSA claims should be

dismissed.  Instead, Plaintiffs take the position that this issue must be established via evidence on

summary judgment, not a motion to dismiss.  Plaintiffs are incorrect.

The viability of Ms. DeCastro's FLSA claims goes to the Court's subject matter

jurisdiction over her case as Ms.DeCastro has no other federal claims and there is no indication

that her amount-in-controversy even remotely approximates seventy-five thousand dollars.  A

12(b)(1) factual attack, as here, means that

> [T]he trial court may proceed as it never could under 12(b)(6) or Fed. R. Civ. P. 56.
> Because at issue in a factual 12(b)(1) motion is the trial court's jurisdiction—its
> very power to hear the case—there is substantial authority that the trial court is free
> to weigh the evidence and satisfy itself as to the existence of its power to hear the
> case.  In short, no presumptive truthfulness attaches to plaintiff's allegations, and
> the existence of disputed material facts will not preclude the trial court from
> evaluating for itself the merits of jurisdictional claims.

*Williamson v. Tucker*, 645 F.2d 404, 412-13 (6th Cir. 1981).  Here, the evidence relied upon by the

Court to determine its subject matter jurisdiction occurred in the very presence of the Court.

Plaintiffs provided no counterevidence to establish Ms. DeCastro's claims are not precluded by the

FLSA statute of limitations.[9]  Ms. DeCastro's FLSA claim is therefore time-barred.

Ms. DeCastro has also brought claims under Florida law.  The Court declines to exercise

---

9 This Court may also be able to dismiss the claim under Rule 12(b)(6) insofar as a court may consider a document
attached to a 12(b)(6) motion to dismiss if it is central to a party's claim and the authenticity is not challenged.  *SFM
Holdings, Ltd. v. Banc of Am. Sec., LLC*, 600 F.3d 1334, 1337 (11th Cir. 2010).  A transcript of the evidentiary
hearing, which was conducted before the undersigned, is attached to Defendants' motion to dismiss and the
authenticity of that document is not challenged.  The date upon which Ms. DeCastro's claims accrued is central to her
case.  Furthermore, the Eleventh Circuit has noted that the purpose behind prohibiting documents outside of a
complaint from being considered on a motion to dismiss is to "protect[] against a party from being caught by surprise".
*Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1279 (11th Cir. 1999).  Here, there is no surprise insofar as the
information used by the Court in reaching its decision was generated in open court, by Ms. DeCastro, in the presence
of her counsel, in response to her counsel's own question.

supplemental jurisdiction over Ms. DeCastro's state law claims. *See United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966).

### C. Defendants' Motion for Enlargement of Time to Conduct Depositions and Further Discovery

In light of the Court's rulings above, Defendants' Motion for Enlargement of Time to Conduct Depositions and Further Discovery is moot and this case will be closed.

### D. Defendants' Objections to Magistrate Judge Hopkins' Orders

Defendants object to certain sanctions imposed by Judge Hopkins after a recent discovery hearing. At that hearing, the crux of the dispute between the parties was Defendants' alleged lack of responsiveness to Plaintiffs' discovery requests, notwithstanding the fact that this is an expedited case and the Court has denied multiple motions to stay discovery. The Court has reviewed the transcript of the hearing before Judge Hopkins which resulted in the two orders currently on appeal. Viewing Judge Hopkins' decisions in light of the information available to him, as provided by the parties, the Court does not disagree with Judge Hopkins' decisions. Nonetheless, the Court has the benefit of knowledge of its own rulings at the evidentiary hearing on January 7, 2016 as well as perfect hindsight as to the ultimate merits of Defendants' motion to compel arbitration.

In the Court's opinion, the parties were clearly on notice as of January 7, 2016 that the Court would not certify a collective action in this case until, at a minimum, the motion to compel was resolved. For this reason, Plaintiffs amended their complaint in such a way as to cause the consent Plaintiffs to become named Plaintiffs. The Court denied Plaintiffs' motion to certify a collective action. The Court denied Defendants' motion to stay discovery based in part upon the fact that class-based discovery concerns had been addressed. The Court's rulings on these matters

were based in no small part on the fact that Defendants' motion to compel arbitration was not only pending, but had been pending for a lengthy period of time. The length of time required for the Court to rule on that motion was derived not from the fault of any one party, but from conflicts between the schedule of the Court, the schedule of counsel, and intervening holidays.

Defendants appear to treat Judge Hopkins' sanctions as a matter that this Court can review *de novo*. That is incorrect. Pretrial matters referred to a magistrate are reviewed under a clearly erroneous standard. 28 U.S.C. § 636(b)(1)(A); *see also Malibu Media, LLC v. Doe*, 923 F. Supp. 2d 1339, 1346 (M.D. Fla. 2013) ("Inasmuch as a [a magistrate decision] relates to discovery issues, and therefore does not dispose of a claim or a defense of any party, it is a nondispositive order. As such, to prevail in their Objection . . . Defendants must establish that the conclusions to which they object are clearly erroneous or contrary to law."). Certainly with respect to the matters before Judge Hopkins that did not pertain to class-based discovery, this Court is not prepared to conclude that Judge Hopkins' decision is clearly erroneous or contrary to law.

With respect to class-based discovery, Judge Hopkins should have the benefit of ruling in light of the contents of this Order. Furthermore, Judge Hopkins should have the benefit of the full record that preceded his decision. Although the parties apprised Judge Hopkins of the Court's order at docket entry 77, the parties did not fully apprise Judge Hopkins of matters that occurred prior to docket entry 77. For example, at the evidentiary hearing on January 7, 2016, the following exchange occurred:

> *THE COURT:* If you have other prospective Plaintiffs, it may be because of this very unique situation in this case where each person's situation may well be different or, in any event, this kind of a scenario **cannot lend itself to sort of ongoing persons joining as consent Plaintiffs** because judicial economy simply wouldn't be met by having **a series of mini trials**. And if there are other people and you want to bring additional cases down the road, that is the way you approach it.

17

I was trying to think how to handle the whole collective action in light of the fact that the parties put at issue a question of fact that must be determined, and **it should only be determined once in this case**, doesn't mean in other cases it might not come up again, but that would seem to be the most efficient, economical and just way to approach it.

*MR. MORGAN:* **We would prefer not to come back and redo this again** in front of the jury. We'll check with our clients on that issue. With regard to the class certification, there was a deadline to do that and so we filed a motion to meet the deadline. The motion before you on the class certification, one, it is a conditional class so we can send notices out to see if there are other entertainers.

I understand at some point there will be a decision what classes exist or don't exist, where there are similarly situated entertainers or not similar situated entertainers. I don't know, at this point, if we have -- I am not trying to argue that motion, that is not appropriate at this point. If that motion were to be granted, we could find out which entertainers were more like Ms. DeCastro or some of the other entertainers who testified here.

*THE COURT:* Well, I would have to review it again. While in many respects they may be similarly situated, as that term is defined, for preliminary collective action matters, but now that the threshold issue has been presented to the Court, **it suggests that the Court is going to have to take up factual matters to determine whether they are similarly situated or not. That may suggest that the motion can't be granted just because of this very issue.**

*MR. MORGAN:* Understood.

*THE COURT:* Not only substantively -- again, I am not ruling on that motion, but sort of dovetailing with it, but because I cannot see -- this is such a fundamental issue, I can't even get to the stage of ruling on whether there should be an arbitration, let alone your trial at the end of the day, whether it is a hearing before the arbitrator or a trial here should there not be an arbitration, because we have the threshold issue, and the very basis is factual disputes and they are unique to each Plaintiff. It so happens the ones that testified here today, they weren't completely aligned. Ms. DeCastro is a consent, but she didn't receive one. Monteverde, Reid, Krauel, Williams, they more or less said the same thing, McGonigal said something different. The Court finds it was a genuine issue of material fact.

I think I have to have another hearing to say, there is a factual dispute that needs to go to a jury trial. I can give you time to think about that. There are a lot of issues here being presented, **but there is a fundamental problem with allowing it to proceed beyond those whom you have for collective action purposes**, given the Court has identified this threshold determination that must be made.

So, from my standpoint, it would seem that perhaps, you know, **if you want to encompass those you already have as the universe of people for this case, perhaps seeking leave to amend to add those additional Plaintiffs**, of course, I would hear what objections, if any, there were to that.

This way, when it is presented to the jury or the judge they are as Plaintiffs in the case and not Plaintiffs and consenters, **and the motion for collective action is not out there any longer**. We know it is a universe of people, that is what this case is all about, and you get a threshold ruling, factual finding from a jury or judge, coupled with legal determinations from the judge and you know based on this it is a case for arbitration or jury and you march along with your case.

*MR. MORGAN:* With the guidance you have given us, we can sit down with Defense counsel and perhaps establish deadlines and present them in a motion for you as a judge once this fundamental issue is determined.

*THE COURT:* That needs to be determined before any judge or jury determination on the factual dispute, **because I only want to do it once**.

. . .

The second issue I would like your position on is the collective action motion. I would like you to be reasonable with one another about it and practical about it, given what we are facing. Give me your position -- given the fact that you know a summary jury trial or factual determination by a judge has to be made, given that, **I don't think it is contemplated that a judge in a case should be holding serial summary evidentiary hearings** or having serial summary jury trials on factual issues before we even get to the ultimate trial.

I don't think that is what is contemplated under FLSA. Again, you can tell me what case law you find to the contrary, but I think, to me, there should be some acknowledgment that because of the unique nature of, you know, this case and the factual issue that has been put at play, that we should come to an agreement as to the limitation of who the Plaintiffs are in this case. **And let's talk about them as a finite number** so we can move forward . . . .

DE 119-10 at 84-91 (emphasis added).  At the conclusion of the evidentiary hearing, the

Court issued an order that read in part: "The parties are also ordered to file, in [a] notice, whether

an agreement has been reached in the matter of the pending motion for certification of a collective

action."  DE 70.  The parties responded as follows:

> The parties have agreed Plaintiffs will withdraw Plaintiffs' Motion to Conditionally Certify a Collective Action Pursuant to 29 U.S.C. § 216(b) and Motion for Declaration of a Class Action as to Minimum Wage Claims Pursuant to Rule 23(b)(3) and Motion for Authorization to Send Notice to the Class filed on December 23, 2015. Plaintiffs' will re-file their Motion within ten (10) days of the Court's resolution of all issues raised in Defendants' Motion to Dismiss and Compel Arbitration, Plaintiffs' Memorandum of Law in Opposition of Defendants' Motion to Dismiss and Compel Arbitration and Defendants' Reply in Further Support of their Motion.

DE 76.  Immediately thereafter, in light of the above, the Court denied Plaintiffs' Motion to Certify a Collective Action and Plaintiffs filed an amended complaint (with the Court's approval) wherein all consent-Plaintiffs became named-Plaintiffs.   DE 80.  Defendants then sought a stay of discovery, again, based in part over concerns with class-based discovery when such discovery would be prohibited if this matter were referred to arbitration.  Defendants' concerns were valid given that, at that time, Defendants' motion to compel arbitration continued to remain pending. The Court denied Defendants' request to stay discovery, noting that "concerns over class-based discovery are no longer applicable."  DE 88.

In light of the transcript of the evidentiary hearing quoted above and in light of the contents of this Order, the Court concludes that the best resolution is to vacate the orders on appeal as moot. The Court further remands the matter of sanctions to Judge Hopkins to consider with the benefit of the procedural history of this case, including this Order.

### III.    CONCLUSION

For all of the foregoing reasons, Defendants' Motion to Dismiss and Compel Arbitration [DE 21] is **GRANTED AS TO ARBITRATION**;

Defendants' Supplemental Motion to Dismiss [DE 92] is **GRANTED**;

Defendants' Motion for Enlargement of Time to Conduct Depositions and Further Discovery [DE 108] is **DENIED AS MOOT**;

Defendants' Objection to Magistrate Judge Order on Motion to Compel [DE 124] is **GRANTED** and the order on appeal is **VACATED**.  Defendants' Objection of Magistrate Judge Order on Motion for Protective Order [DE 125] is **GRANTED** and the order on appeal is **VACATED**.  This matter of sanctions is **REMANDED** to Judge Hopkins consistent with this Order;

This matter is **REFERRED TO ARBITRATION** with respect to every Plaintiff other than Ms. DeCastro;

Ms. DeCastro's FLSA claim is **DISMISSED AS TIME-BARRED**;

Ms. DeCastro's state law claims are **DISMISSED FOR LACK OF SUBJECT MATTER JURISDICTION**;

All remaining claims and this case are hereby **STAYED** pending arbitration; and

The Clerk of the Court is directed to **CLOSE THIS CASE FOR ADMINISTRATIVE PURPOSES ONLY**.

**DONE and ORDERED** in Chambers, Fort Pierce, Florida, this 23rd day of March, 2016.

ROBIN L. ROSENBERG
UNITED STATES DISTRICT JUDGE

Copies furnished to Counsel of Record